**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 06-60370-CIV-COOKE

MICHAEL GEORGE BRUNO, SR.,

     *Petitioner*,

vs.

WALTER A. MCNEIL,
Secretary, Florida Department of Corrections,

     *Respondent*.

_____/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

THIS MATTER is before me on the Petition for Writ of Habeas Corpus [D.E. 1]. The

Petitioner, Michael George Bruno, Sr., is currently on death row at the Union Correctional

Institution in Raiford, Florida, following his conviction for the first-degree murder of Lionel

Merlano. Mr. Bruno seeks to overturn his death sentence. I have reviewed the Parties'

arguments, the entire record of Mr. Bruno's state court proceedings, and the relevant legal

authorities. For the reasons that follow, the Petition for Writ of Habeas Corpus is denied.

**I. FACTUAL & PROCEDURAL BACKGROUND**

On September 11, 1986, Mr. Bruno was convicted of first-degree murder for beating

Lionel Merlano with a crowbar, and then shooting him in the head.[1] *Bruno v. State*, 574 So. 2d 76,

78 (Fla. 1991). The jury recommended that Mr. Bruno be sentenced to death. *Id.* at 78.

---

[1] After a night of drinking with Mr. Merlano, Mr. Bruno pulled a crowbar from the front of his
trousers, and hit Mr. Merlano several times. When Mr. Merlano fell to the floor, Mr. Bruno sent
his 16 year old son to the bathroom to retrieve a gun. Mr. Bruno held a pillow over the gun, and
shot Mr. Merlano twice in the head. Mr. Bruno made several trips back to Mr. Merlano's
apartment after shooting him to steal his stereo equipment. *Bruno*, 574 So. 2d at 78.

On September 25, 1987, the trial court adopted the jury's recommendation and entered its judgment, sentencing Mr. Bruno to death.  (*See* Resp. to Pet. 4 [D.E. 16]).  Mr. Bruno's initial appeal was unsuccessful as the Florida Supreme Court affirmed both his conviction and death sentence.  (*See id.* at 5).  The United States Supreme Court declined to grant his petition for a writ of certiorari.  *Bruno v. Florida*, 502 U.S. 834 (1991).

In 1993, Mr. Bruno filed his first motion for post-conviction relief in the trial court pursuant to Florida Rule of Criminal Procedure 3.850.  The trial court denied Mr. Bruno's motion and the Florida Supreme Court affirmed.  *Bruno v. State*, 807 So. 2d 55 (Fla. 2001).  Next, Mr. Bruno sought habeas relief from the Florida Supreme Court, which denied his petition in December 2002.  *Bruno v. Moore*, 838 So. 2d 485 (Fla. 2002).  On May 9, 2003, Mr. Bruno filed another petition for writ of certiorari to the United States Supreme Court, which was also denied. *Bruno v. Crosby*, 540 U.S. 840 (2003).  Mr. Bruno also filed a motion, with the trial court, for DNA testing pursuant to Florida Rule of Criminal Procedure 3.853, and Rule 3.851.  Both of these motions were denied, and the Florida Supreme Court affirmed the trial court's decision in December 2005. *Bruno v. State*, 926 So. 2d 1269 (Fla. 2005).

On March 29, 2006, Mr. Bruno filed, with this Court, his petition for a writ of habeas corpus by a person in state custody under 28 U.S.C. § 2254 [D.E. 1].  In his petition Mr. Bruno asserts five primary claims:[2]

> 1)  That his confession was unlawfully obtained in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and should have been suppressed along with evidentiary fruits.

> 2)  That no adequate adversarial testing occurred at both phases of Mr. Bruno's capital trial due to ineffective assistance of counsel, in violation of the Sixth, Eighth, and Fourteenth Amendments.

---

2  Mr. Bruno's petition contains a total of sixteen claims for relief, including subparts.

3)  That he received ineffective assistance of counsel on direct appeal, in violation of the Sixth Amendment.

4)  That the Florida Supreme Court failed to conduct a constitutionally adequate harmless error analysis on direct appeal, thereby rendering the direct appeal process unreliable in violation of the Sixth, Eighth, and Fourteenth Amendments.

5)  That he was denied his right to a fair trial due to the prosecution's improper closing argument at the guilt phase, and his right to the effective assistance of counsel due to the failure to object.

(Pet. for Writ [D.E. 1]).  Both Parties agree that the petition was timely filed.  (*See* Resp't's Supp. Br. [D.E. 36] and Pet'r's Supp. Br.[D.E. 37]).

## II.  <u>LEGAL STANDARDS</u>

This habeas corpus petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214 (1996) (codified at various provisions in Title 28 of the U.S. Code.  Under the AEDPA, if a claim was adjudicated on the merits in state court, habeas corpus relief can only be granted if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  This is an "exacting standard."  *Maharaj v. Sec'y, Dep't of Corrs.,* 432 F.2d 1292, 1308 (11th Cir. 2005)  Pursuant to section 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an] [opposite] result."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (opinion of O'Connor, J., for a

majority of the Court). In other words, the "contrary to" prong means that "the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." *Id.*

### III. <u>ANALYSIS</u>

### A.  WHETHER MR. BRUNO'S CONFESSION WAS UNLAWFULLY OBTAINED.

Mr. Bruno claims that certain statements he made to the police during interrogations were unlawfully obtained. (*See* Pet. for Writ 36-50 [D.E. 1]). The trial court denied Mr. Bruno's motion to suppress, and at trial, the statements were admitted into evidence. (*See id.*). On direct appeal, Mr. Bruno argued to the Florida Supreme Court that "his confession should have been suppressed because it was obtained by coercion and improper promises with respect to the treatment of his son." *See Bruno v. State*, 574 So. 2d 76, 79 (Fla. 1991).

Here, Mr. Bruno argues that the Florida Supreme Court: (1) erred in not conducting a *de novo* review of the trial court's rejection of the motion to suppress, and (2) resolved this issue in a way that was "contrary to and/or an unreasonable application of Supreme Court precedent" because it applied a *quid pro quo* standard to make a confession involuntary for constitutional purposes in violation of *Bram v. United States*, 168 U.S. 532, 542-43 (1897). (*See* Pet. for Writ 44-48 [D.E. 1]).[3]

The State asserts that the "Florida Supreme Court, as well as the trial court, found that <u>no</u> inducement, even an implied one, existed" and that state court factual findings are subject to the presumption of correctness by federal habeas courts. (*See* Resp. to Pet. 49 [D.E. 16]). The State

---

3  Mr. Bruno also makes an argument regarding his Fifth Amendment right to remain silent, however, he does not argue specifically that the Florida Supreme Court erred on direct appeal of this issue. (*See* Pet. for Writ 48-50 [D.E. 1]). Since the claim was argued and exhausted before the Florida Supreme Court, I will address it. *See Bruno*, 574 So. 2d at 80.

concludes that the record clearly shows that the state court's findings were supported by the record, did not violate federal law, and that Mr. Bruno's argument is baseless.  (*Id.* at 53).

Mr. Bruno replies that the state courts made "no subsidiary factual findings relating to the confession, reciting only the conclusory statement that the confession was 'knowingly, freely, and voluntarily given'" and that this is not consistent with federal precedent. (*See* Pet'r's Reply 11 [D.E. 26]).  Mr. Bruno further argues that the record does show that his confession was induced and was involuntary and should have been suppressed.  (*See id.* at 13-14).  Mr. Bruno relies on two separate theories as to why his confession should be suppressed and habeas relief granted: 1) his custodial statement was involuntary, and 2) he was deprived of his Fifth Amendment right to remain silent.

**1) <u>Involuntariness of Statement.</u>**

Mr. Bruno's argument that his confession was not voluntary is based on his testimony that the officers who interrogated him at the police station made certain promises regarding the prosecution of his son for his possible involvement in this crime.  (*See* Pet. for Writ 42-48 [D.E. 1]).  Prior to trial, the state circuit court held an evidentiary hearing on Mr. Bruno's motion to suppress.  Mr. Bruno argues that Detective Edgerton initially testified that he did not make any promises to Mr. Bruno in order to get him to make any statements but, later during trial, admitted that he did promise Mr. Bruno that if he made a statement under oath swearing that his son was not involved in the killing, his son would not be charged.  (*See id.* at 37-38).  The Florida Supreme Court rejected this argument.

This claim implicates both prongs of the analysis of federal habeas claims. *See* 28 U.S.C. § 2254.  First, whether the state court made an unreasonable determination of the facts.  Second,

whetherthe state court made an unreasonable determination of the law.  For the reasons below, I find that the state court did neither.

The Florida Supreme Court reviewed the record and made a factual determination that Mr. Bruno's "confession was freely and voluntarily made."  *Bruno*, 574 So. 2d at 79.  In order to grant habeas relief to Mr. Bruno, I would need to find that this was an unreasonable determination of the facts.  "A state court's determination of the facts, however, is entitled to deference" under section 2254(e)(1).  *See Maharaj,* 432 F.3d at 1309.  This means that a federal habeas court must presume that findings of fact by a state court are correct, and a habeas petitioner must rebut that presumption by clear and convincing evidence.  *See Hunter v. Sec'y, Dep't of Corrs.,* 395 F.3d 1196, 1200 (11th Cir. 2005).

Here, Mr. Bruno has the burden of rebutting the presumption that the Florida Supreme Court's finding – that no coercion or improper promises were made – was correct.  He has not done so.  It appears that the Florida Supreme Court denied this claim because "the police legitimately believed that Bruno's son was involved but recognized that if Bruno gave a sworn statement exculpating his son there would be no basis upon which his son could be charged." *Bruno*, 574 So. 2d at 79.  Based on the police officer's testimony, the Florida Supreme Court determined that no coercion or improper promises were made.  *Id.*  Mr. Bruno has done nothing to rebut this other than to simply quote the actual testimony and attach a meaning to it which the Florida Supreme Court declined to infer.  I have reviewed the testimony, and I cannot say that this was an unreasonable determination of the facts as presented to the Florida Supreme Court. Therefore, I decline to grant habeas relief based on Mr. Bruno's challenge of the state court's factual determination.

Similarly, Mr. Bruno has not made his case under the "unreasonable application" prong of section 2254(d)(1).  The "unreasonable application" prong applies when a state court identifies the correct legal principle but purportedly applies it incorrectly to the facts before it.  *Williams*, 529 U.S. at 409.  A federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*; *see also Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003).  An "unreasonable application" also occurs if a state court "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001).

The Florida Supreme Court cited to only one case: *State v. Moore*, 530 So. 2d 349 (Fla. 2d DCA 1988).  Mr. Bruno suggests that since the state court did not provide an analysis of this claim under federal law, there is a flaw in the process for federal habeas purposes.  (*See* Pet. for Writ 36 [D.E. 1]).  That analysis is incorrect.

> "A state-court decision is 'contrary to our clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'  Avoiding these pitfalls does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'"

*Early v. Packer*, 537 U.S. 3 (2002) (quoting *Williams*, 529 U.S. at 405-06) (emphasis in original). Voluntary statements "remain a proper element in law enforcement."  *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).  "[F]ar from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable . . . .  Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *Oregon v. Elstad*, 470 U.S. 298, 305 (1985) (internal citations and quotation marks omitted).

Here, the state courts determined, and I agree, that Mr. Bruno's confession was not obtained by coercion or improper promises. As such, no Constitutional implications apply and the Florida Supreme Court did not make an unreasonable application of federal law. Habeas relief is denied.

**2) Right to Remain Silent.**

Mr. Bruno's second sub-claim is premised on the argument that his counsel contacted the police department *prior* to Mr. Bruno's confession and instructed the detective to not take any statements from Mr. Bruno. (*See* Pet. for Writ 48-50 [D.E. 1]). Mr. Bruno argues that the police department's refusal to cease all questioning violated his Fifth Amendment right to remain silent. The Florida Supreme Court denied this claim based on the factual determination that Mr. Bruno had already confessed prior to his counsel's contact with the police department. *Bruno*, 574 So. 2d at 80.

Here, I need not make a determination of whether the Florida Supreme Court's factual determination was unreasonable because whether Mr. Bruno confessed before or after he was aware that his family had retained counsel to represent him is not relevant to this analysis. As previously determined, Mr. Bruno's confession was not the product of coercion or improper promises. Therefore, once Mr. Bruno gave a valid waiver of his right to remain silent, the analysis is complete. *See Moran v. Burbine*, 475 U.S. 412, 422 (1986) ("Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right."). The Florida Supreme Court's denial of Mr. Bruno's claim was not an unreasonable application of clearly established federal law. *See Fotopoulos v. Sec'y, Dep't of Corrs.*, 516 F.3d 1229, 1232 (11th Cir. 2008). Habeas relief is denied.

## B. WHETHER ADEQUATE ADVERSARIAL TESTING OCCURRED AT BOTH PHASES OF MR. BRUNO'S CAPITAL TRIAL.

Mr. Bruno's sub-claims for ineffective assistance of counsel are premised largely on the assertion that his attorney's abuse of cocaine and alcohol led to his failure to adequately prepare and investigate Mr. Bruno's case, in both the guilt and penalty phase. (Pet. for Writ 51 [D.E. 1]). The State responds that the Florida Supreme Court properly applied the *Strickland* standard and denied this claim. (Resp. to Pet. 56 [D.E. 16]). Mr. Bruno replies that the Florida Supreme Court "did not perform the requisite *de novo* review" and that I should therefore "not be bound by any deferential standard of review when assessing the Florida Supreme Court's conclusions, and instead review this matter entirely *de novo*."[4] (Pet'r's Reply 15 [D.E. 26]). For the reasons that follow, habeas relief is denied as to Mr. Bruno's sub-claims for ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668 (1984). Review of counsel's conduct is to be highly deferential, and second-guessing an attorney's performance is not permitted. *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Since a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). To establish a claim of ineffective assistance of counsel "a defendant must show that his counsel's representation fell

---

4 In support of this extraordinary proposition, Mr. Bruno cites to *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003). (Pet'r's Reply 15 [D.E. 26]). This is not the holding of *Wiggins*. To assert that *Wiggins* broadly stands for the proposition that if a state supreme court does not "perform the requisite *de novo* review" then a federal habeas court is "mandated" to perform such a review is simply inaccurate. Regardless, I am not convinced by Mr. Bruno's argument that the Florida Supreme Court did not conduct a *de novo* review of his claims.

below an 'objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993) (citing *Strickland*, 466 U.S. at 688, 694).

**1) Trial Counsel's Impairments.**

Mr. Bruno's first sub-claim is that "the time counsel spent dealing with his own personal addictions, including his subsequent admission to a substance abuse hospital weeks before Mr. Bruno's trial was set to begin, and the significant amount of time spent on the federal case, all impacted [his attorney's] preparation (or lack thereof), for . . . trial." (Pet. for Writ 98 [D.E. 1]).

As an initial matter I note that "under *Strickland* the fact that an attorney used drugs is not, *in and of itself*, relevant to an ineffective assistance claim. The critical inquiry is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant." *Berry v. King*, 765 F.2d 451, 454 (5th Cir. 1985) (emphasis in original).

Mr. Bruno first presented this claim in his Rule 3.850 post-conviction motion, which the Florida Supreme Court subsequently denied. It is not disputed that Mr. Bruno's trial counsel, C. Craig Stella, Esq.,[5] had a drug and alcohol problem during the time that he represented Mr. Bruno. He admitted himself into a hospital, for his drinking problem, and remained there for twenty-eight days. After Mr. Stella was released from the hospital he "apprised both Bruno and the court of his problem and offered to withdraw, but Bruno asked him to continue as counsel." *Bruno v. State*, 807 So. 2d 55, 62 (Fla. 2001). As a result, the trial court rescheduled the trial.

---

5  According to the Petition, Mr. Stella was subject to a disciplinary proceeding resulting in the inactivation of his law license and closure of his law practice in 2002. In 2005, Mr. Stella's license was reactivated and he is currently an active member of the Florida Bar. (Pet. for Writ 51 [D.E. 1]).

The Florida Supreme Court denied the ineffective assistance of counsel claim, agreeing with the trial court, which found that Mr. Bruno "failed to meet his burden of demonstrating how counsel's drug and alcohol usage prior to trial rendered ineffective his legal representation to the Defendant and how such conduct prejudiced the Defendant." *Bruno v. State*, 807 So. 2d 55, 62 (Fla. 2001). After a careful review of this claim, I agree with the Florida Supreme Court.

This claim suffers a fatal flaw: Mr. Bruno failed to argue in any definitive way how he was prejudiced. To prevail on this claim, Mr. Bruno must show that he was prejudiced by his attorney's conduct. *See Strickland*, 466 U.S. at 668. To have been prejudiced, Mr. Bruno must show that his counsel's deficient performance undermined the defense and demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Id*. at 687, 688, 694. "When a defendant challenges a death sentence . . . , the question is whether there is reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. Here, Mr. Bruno does not cite to one specific fact or instance which, as a result of counsel's errors would have undermined the outcome of Mr. Bruno's trial. (*See* Pet. for Writ 96-102 [D.E. 1]).[6]

I am troubled by the fact that Mr. Bruno's counsel was abusing alcohol and using illegal drugs during his representation of Mr. Bruno, however, that fact, in and of itself, does not constitute *per se* ineffective assistance of counsel. *Berry*, 765 F.2d at 454. Mr. Bruno must still show that he was prejudiced by counsel's performance. *See Brownlee*, 306 F.3d at 1059-60. Mr. Bruno has not done so. Therefore, habeas relief is denied as to this sub-claim.

---

6  A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995).

2) **Breach of Confidentiality and Duty of Loyalty**.

In his second sub-claim, Mr. Bruno argues that his trial counsel "repeatedly and unreasonably divulged confidential and damaging information to the trial court, the ultimate sentencer in this case." (Pet. for Writ 102 [D.E. 1]). Mr. Bruno attacks the State's response, asserting that it fails to address "the gravamen of Mr. Bruno's claim except to summarily argue that, at the state court evidentiary hearing Stella explained his reasons for doing and saying what he did and thus the inquiry is at an end because Stella had his reasons for selling out his client and the credibility of his mental health expert to the ultimate factfinder and sentencer." (Pet'r's Reply 20 [D.E. 26]).

Mr. Bruno initially made this claim in his Rule 3.850 post-conviction motion. After considering the testimony of Mr. Bruno's trial counsel, the trial court found no evidence of a conflict of interest, and further found that Mr. Bruno had failed to show that he was prejudiced by his attorney's statements to the judge. *Bruno*, 807 So. 2d at 64. The Florida Supreme Court also rejected this claim, finding that Mr. Bruno had failed to show that he was prejudiced by his attorney's allegedly conflicted statements to the trial judge. *Id*.

The credibility of the witness is a determination for the trial court not a federal habeas court. *See Freund v. Butterworth*, 165 F.3d 839 (11th Cir. 1999) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("Title 28 USC § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). The state courts have determined this issue and the record here does not reveal that the Court's deference to the state court's determination would be in anyway misplaced. The state supreme court reviewed the trial court's order on appeal and affirmed. *Bruno*, 807 So. 2d at 62-64. Further, credibility is a factual issue. "A determination of a factual issue made by a State

-12-

court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e).

I have reviewed the record and testimony presented at the evidentiary hearing held in state court and find that Mr. Bruno has not overcome the presumption set out in 28 U.S.C. § 2254(e). Here, the state supreme court reviewed the record and made factual determinations regarding Mr. Stella's credibility at the evidentiary hearing and the reasonableness of his strategy determinations. Since I do not find that the Florida Supreme Court's decision was unreasonable, I must affirm.

Based on the record, it cannot be said that counsel's decision "w[as] outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690. Additionally, there is nothing in the record to indicate that Mr. Bruno was prejudiced by his counsel's actions.  I cannot say that defense counsel's statements to the trial judge rendered Mr. Bruno's trial "fundamentally unfair" or that "there is a reasonable probability that, but for counsel's unprofessional errors that the result of the proceeding would have been different." *Devier*, 3 F.3d at 1451; *Strickland*, 466 U.S. at 694.  Therefore, habeas relief is also denied as to this sub-claim.

**3) <u>Voluntary Intoxication Defense</u>.**

Mr. Bruno argues that his counsel rendered a "deficient performance" by failing to conduct an investigation into a voluntary intoxication defense.  (*Id.* at 113).  The State points out that because Mr. Bruno rejected his counsel's offer to present a voluntary intoxication defense at trial, he is now foreclosed from arguing that his counsel was ineffective.  (*See* Resp. to Pet. 76 [D.E. 16]).  Mr. Bruno replies, his counsel was obligated to conduct an investigation into the possibility of presenting a voluntary intoxication defense regardless of Mr. Bruno's wishes, and he failed to do so.  (*See* Pet'r's Reply 30 [D.E. 26]).

-13-

The Florida Supreme Court rejected this claim, noting that Mr. Bruno "adamantly refused the presentation of a voluntary intoxication defense" at an evidentiary hearing. *Bruno*, 807 So. 2d at 64. The Florida Supreme Court went on to explain that "[t]he decision not to present the affirmative defense of 'voluntary intoxication,' was based on a strategy decision which was motivated by the Defendant's conscious decision, rather than a result of [counsel's] legal incompetency." *Id.*

I agree with the Florida Supreme Court's analysis. While Mr. Bruno asserts that his counsel was ineffective for failing to conduct an investigation into a voluntary intoxication defense, the record is clear that Mr. Stella did interview Mr. Bruno's son regarding his and his father's drug use on the night in question. (*See* R. on Appeal, Ex. C-3 at 235 [D.E. 17]). Similarly, Mr. Stella consulted with Dr. Stillman regarding a possible voluntary intoxication defense. (*See id.* at 186 [D.E. 17]). Therefore, Mr. Bruno's assertion that his counsel failed to investigate a possible voluntary intoxication defense is inaccurate. Further, regardless of whether Mr. Stella did not pursue the defense at trial based on Mr. Bruno's adamant refusal or simply for strategic reasons, I will not second guess Mr. Stella's decisions after he conducted an appropriate investigation of the facts. Nor will I reverse the Florida Supreme Court's determination of this issue absent a finding of unreasonableness. *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) (explaining that review of counsel's conduct is to be highly deferential); *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing [an attorney's performance] with the benefit of hindsight."). For these reasons, habeas relief is denied as to this sub-claim.

**4) <u>Failure to Seek Suppression of Initial Statement</u>.**

On August 12, 1986, Mr. Bruno was first interrogated by the police.  (*See* Pet. for Writ 122 [D.E. 1]).  At that time, Mr. Bruno made a statement denying any involvement in the crime. This statement was later used by the prosecution to discredit Mr. Bruno.  (*See id.*).  Here, Mr. Bruno argues that it was ineffective assistance of counsel for Mr. Stella to not have moved to suppress this statement.  (*See id.*).  The State responds that Mr. Stella testified, at the evidentiary hearing on Mr. Bruno's post-conviction motion, that he reviewed those statements, decided they were not made in a custodial setting and therefore not subject to *Miranda*.  This, the State argues, was a tactical decision which was reasonable.  (Resp. to Pet. 82 [D.E. 16]).

The Florida Supreme Court rejected this claim, agreeing with the trial court's assessment that Mr. Bruno "failed to meet the second prong of the *Strickland* test" because he "failed to demonstrate that there [was] a reasonable probability that, but for the admission of his exculpatory statement, the verdict would have been different."  *Bruno*, 807 So. 2d at 64-65

I agree with the Florida Supreme Court's conclusion.  While Mr. Bruno argues that his counsel was ineffective for failing to suppress his initial statement to the police, there is nothing in the record to suggest that this "failure" to suppress a statement that may or may not have triggered *Miranda* warnings is anything more than speculation.  Since Mr. Bruno cannot, and does not, show prejudice I need not engage in that analysis.  There is no indication that trial counsel's failure to suppress this statement rendered Mr. Bruno's trial "fundamentally unfair" or that "there is a reasonable probability that, but for counsel's unprofessional errors that the result of the proceeding would have been different."  *Devier*, 3 F.3d at 1451; *Strickland*, 466 U.S. at 694.  Therefore, habeas relief is denied as to this sub-claim.

-15-

**5) Failure to Attack the "Confession" on Intoxication Grounds.**

Mr. Bruno argues that his trial counsel was ineffective for not attacking the voluntariness of Mr. Bruno's alleged statement, and for not cross examining the police detectives about this issue at trial.  (Pet. for Writ 129 [D.E. 1]).  The State responds that the Petitioner has failed "to allege how the state courts failed in their fact finding or the application of the appropriate laws." (Resp. to Pet. 85 [D.E. 16]). On appeal from the denial of Mr. Bruno's Rule 3.850 motion, the Florida Supreme Court found that "counsel cannot be deemed ineffective for failing to pursue a theory which there is no evidence in the record to support."  *Bruno*, 807 So. 2d at 65-66.  The court concluded that Mr. Bruno had failed to meet the first prong of the *Strickland* test.  *Id.*

I agree with the Florida Supreme Court's finding.  "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, and by giving a 'heavy measure of deference to counsel's judgments.'"  *Rompilla v. Beard,* 545 U.S. 374, 380-81 (2005) (citations omitted).

Under the applicable AEDPA standards, Mr. Bruno is not entitled to habeas relief.  The Florida Supreme Court's ruling on Mr. Bruno's ineffective assistance of counsel claim regarding the suppression of his statement to police on intoxication grounds was not contrary to, or an unreasonable application of, clearly established federal law.  Nor was the ruling based on an unreasonable determination of the facts for the reasons outlined below.

The basis for Mr. Bruno's claim comes from testimony given at his Rule 3.850 evidentiary hearing.  This hearing was in 1997, almost an entire decade after Mr. Bruno's conviction and sentence.  It was then that Mr. Bruno's expert witness came forth with the testimony that Mr. Bruno was hallucinating at the time he was being questioned at the police station.  The record

-16-

indicates that this information was not available to trial counsel back in 1987.  Mr. Bruno argues

that is because his counsel failed to adequately investigate "Mr. Bruno's severe intoxication at the

time he made his second statement, where he told the police he killed the victim in self-defense."

(Pet. for Writ 127 [D.E. 1]).  There is nothing in the record, however, to indicate that an

investigation into whether Mr. Bruno was sober at the time of his second statement to the police

should have been done *at that time.*  Therefore, Mr. Stella did not act "outside the wide range of

professionally competent assistance." *Strickland*, 466 U.S. at 690.   Further, under the AEDPA, the

Court is bound to afford the state court's rulings deference unless they make a unreasonable

application of federal law.  I do not find that the Florida Supreme Court's determination was an

unreasonable application of federal law or an unreasonable determination of facts.  As such,

habeas relief is denied.

**6) Failure to Effectively Challenge State's Case.**

This sub-claim argues five separate grounds for relief.  Mr. Bruno asserts, the Florida

Supreme Court's conclusions that "these matters were tactical choices, and are within the standard

of competency of defense counsel" and that there was "no reasonable probability that the verdict

would have been any different" were erroneous as a matter of law and fact.  (Pet. for Writ 129

[D.E. 1]).  Further, Mr. Bruno argues that either "singularly and/or cumulatively, these errors

undermine confidence in the guilt and penalty phases of Mr. Bruno's trial."  (*Id.*).  As a threshold

matter, unless the trial was rendered fundamentally unfair, the Eleventh Circuit Court of Appeals

has declined to entertain "cumulative error" claims.  *See Cargill v. Turpin*, 120 F.3d 1366, 1386-

87 (11th Cir. 1997).  For reasons articulated in this Order, I find that Mr. Bruno's trial was not

rendered fundamentally unfair.  Additionally, since I find no errors, there can be no cumulative

error.  *See United States v. Waldon*, 363 F.3d 1103 (11th Cir. 2004) (citing *United States v. Allen*,

269 F.3d 842, 847 (7th Cir. 2001) ("If there are no errors or a single error, there can be no cumulative error.")).  Therefore, the cumulative impact claim is denied.  As such, I decline to review these sub-claims for cumulative effect but rather will analyze each sub-claim separately on the merits.

In his Rule 3.850 post-conviction motion, Mr. Bruno argued that his trial counsel failed to effectively challenge the State's case by (1) not impeaching Diane Liu, Bob Bryant, Sharon Spalding, Archie Maheu, Jody Spalding, and Michael Bruno Jr., (2) failing to object to the "fear" testimony; and (3) failing to object to the instruction coercing the jury to reach a verdict.  *Bruno v. State*, 807 So. 2d 55, 66 (Fla. 2001).  The Florida Supreme Court, agreeing with the trial court, rejected these claims explaining that these decisions were "tactical choices" by Mr. Bruno's attorney, and were "within the standard of competency of defense counsel."  *Id.*  The Florida Supreme Court went on to find that Mr. Bruno had failed to meet the first prong of the *Strickland* test.  I agree with the Florida Supreme Court, and habeas relief is denied as to these sub-claims for the reasons articulated below.

In advance of my analysis of these sub-claims, it is noteworthy that Mr. Bruno argues that the opinion of the Florida Supreme Court is flawed because "the Florida Supreme Court did not even address the prejudice prong of *Strickland* . . . ."  (Pet'r's Reply 44 [D.E. 26]).  The United States Supreme Court has very clearly articulated the *Strickland* standard on numerous occasions.  The Court has explained that a petitioner "must *first show* that his counsel was objectively unreasonable, in failing to find arguable issues to appeal - that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them.  If [a petitioner] succeeds in such a showing, he *then has the burden* of demonstrating prejudice."  *Smith v. Robbins,* 528 U.S. 259, 285 (2000) (emphasis added) (internal citations omitted) .  Accordingly, the Florida Supreme

-18-

Court did not make an unreasonable application of federal law as to how to apply *Strickland* to ineffective assistance of counsel claims.

### a) *Failure to Effectively Cross Examine Michael Bruno, Jr.*

The decision to cross-examine a witness and the manner in which it is conducted are tactical decisions "well within the discretion of a defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985)).

Michael George Bruno Jr. was an eyewitness to the crime and implicated his father in the murder. (Pet. for Writ 130 [D.E. 1]).  Mr. Bruno argues that his counsel was ineffective for failing to cross examine Michael Bruno Jr. about his mental health problems or his drug intoxication at the time he allegedly witnessed the murder.  (*See id.* at 130).  The State responds that Mr. Stella's "strategic decision not to impeach Mike Jr. about his mental condition and use of medication was not unreasonable." (Resp. to Pet. 92 [D.E. 16]).  Mr. Bruno replies that "counsel's failures to effectively challenge the trial testimony of the prosecution's key witnesses . . . must be viewed in the context of the overall weakness and inherent inconsistencies in the State's case." (Pet'r's Reply 36 [D.E. 26]).  Here, Mr. Bruno concedes that his counsel did conduct a limited cross-examination of Michael Bruno, Jr., but argues that the cross examination was not effective.

A federal habeas court will not entertain claims which are purely tactical decisions of defense counsel.  *See Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985)).  To entertain this claim would require me to speculate as to what Michael Bruno, Jr. would have said had he been asked those questions on the stand, in front of the jury.  Speculation about what witnesses could have said is not enough to establish prejudice.  *See generally Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997); *see also White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts should at the start presume

effectiveness and should always avoid second-guessing with the benefit of hindsight.").  More importantly, the Florida Supreme Court denied this claim finding that Mr. Bruno had "failed to meet the first prong of the *Strickland* test."  *Bruno*, 807 So. 2d at 66.  This is not an unreasonable application of federal law.  Habeas relief is denied as to this sub-claim.

      **b)** ***Failure to Effectively Impeach Diana Liu***

"At trial, Diana Liu testified that she saw both Mr. Bruno and the deceased at a party that evening around 8:00, drinking beer."  (Pet. for Writ 132 [D.E. 1]).  Mr. Bruno asserts that because his counsel "failed to bring out on cross-examination that Liu did not tell the police about this obviously damaging and memorable statement when first questioned, and further failed to impeach her through the detectives, who did not believe her statement and felt that 'she appeared not to be totally with it'" his counsel was ineffective.  (*Id.* at 133).  Further, Mr. Bruno argues that it was ineffective assistance of counsel to not have deposed Ms. Liu prior to trial.  (*See id*.).  The State responds that the record is unclear as to whether Mr. Stella deposed Ms. Liu (and argues that it is Mr. Bruno's burden to prove that he did not), but that the record is clear that Mr. Stella did cross examine Ms. Liu when she was on the stand and cross examined other witnesses about her.  (*See* Resp. to Pet. 94 [D.E. 16]).

As articulated above, "[i]n evaluating the first, or 'performance' prong of *Strickland*, '[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (citations omitted).  "[A] petitioner must establish that *no competent counsel* would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added).  I cannot conclude that Mr. Stella's representation of Mr. Bruno and alleged "failure to cross examine" witnesses regarding Ms. Liu was such that no competent counsel would have conducted a similar defense

and investigation during the guilt phase of Mr. Bruno's trial.  Therefore, habeas relief is denied as to this claim.[7]

c) *Failure to Effectively Impeach Sharon Spalding*

"Sharon Spaulding was, as Stella testified, an 'important' witness for the State because '[s]he was a potential accessory after the fact, at the very least,' as well as 'the mother of a key suspect in the case.'"  (Pet. for Writ 133 [D.E. 1]).  Mr. Bruno argues that his counsel's failure to question Ms. Spaulding regarding inconsistencies and credibility issues during cross examination constituted ineffective assistance of counsel.  (*See id*. at 134-35).  The State responds that the information that Mr. Bruno argues should have been used to impeach her (prescription drug use)

---

7 Within this sub-claim, Mr. Bruno attempts to also assert a *Brady* violation. (*See* Pet. for Writ 133 [D.E. 1]).  As this claim was not exhausted in the state courts, this claim is unexhausted here for federal habeas review.  To exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Ordinarily, a federal habeas corpus petition which contains unexhausted claims is dismissed pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982), allowing the petitioner to return to the state forum to present his unexhausted claim or claims.  However, such a result in this instance would be futile, since the petitioner's unexhausted claim is now incapable of exhaustion at the state level and would be procedurally barred under Florida law.  Mr. Bruno has already pursued a direct appeal and filed a Rule 3.850 motion in state court, with the denial of the motion affirmed on appeal.  Because there are no procedural avenues remaining available in Florida which would allow Mr. Bruno to return to the state forum and exhaust the subject claim, the claim is likewise procedurally defaulted from federal review. *Collier v. Jones*, 910 F.2d 770, 773 (11th Cir. 1990) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well); *Parker v. Dugger*, 876 F.2d 1470, 1477-78 (11th Cir. 1989) ("plain statement" rule of *Harris v. Reed*, 489 U.S. 255 (1989), does not apply when a claim was never presented in state court).  Claims that are unexhausted and procedurally defaulted in state court are not reviewable by the Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in *Murray v. Carrier*, 477 U.S. 478 (1986).  *See House v. Bell*, 547 U.S. 518 (2006); *Dretke v. Haley*, 541 U.S. 386 (2004); *see also United States v. Frady*, 456 U.S. 152, 168 (1982).  Since Mr. Bruno has not established, let alone alleged, cause to excuse his default, it need not be determined whether he suffered actual prejudice.  *See Glover v. Cain*, 128 F.3d 900, 904 n.5 (5th Cir. 1997).

was inadmissible for impeachment purposes and that Mr. Stella did, in fact, cross examine other witnesses about the veracity of Ms. Spaulding's prior statements. (*See* Resp. to Pet. 96-97 [D.E. 16]).

Again, absent my finding that the Florida Supreme Court's determination that Mr. Bruno failed to prove the first prong of *Strickland* was unreasonable, I am bound to afford the state court's rulings deference under the AEDPA. Based on the record, I do not find that the Florida Supreme Court's determination was unreasonable. There is nothing in the record to suggest that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, or that there was an unreasonable determination of the facts. *See Fotopoulos*, 516 F.3d at 1232. Therefore, the Florida Supreme Court's resolution of this claim of ineffective assistance of counsel was reasonable and in accord with applicable federal authority, and should not be disturbed. *Williams v. Taylor*, 529 U.S. 362 (2000).

**d)** ***Failure to Effectively Impeach Archie Mahue***

"Sharon's Spaulding's husband, Archie Mahue, testified at trial to a very detailed confession that Mr. Bruno allegedly made to him on the morning after the crime; Mahue, however did not come forward with this information until significantly later." (Pet. for Writ 136 [D.E. 1]). Mr. Bruno again argues that his counsel did not effectively cross-examine this witness. (*See id*.). Mr. Bruno does concede that Mr. Stella cross examined Mr. Mahue but argues that Mr. Stella had no tactical reason for failing to ask certain questions which would have gone to Mr. Mahue's credibility. (*See id*.). The State responds that at the evidentiary hearing held on the Rule 3.850 post-conviction motion, counsel for Mr. Bruno provided Mr. Stella with only Mr. Mahue's deposition testimony and not his trial testimony. Therefore, Mr. Stella was unable to offer a tactical reason for why he may or may not have asked certain questions of a witness during the

trial ten years prior.  (*See* Resp. to Pet. 98 [D.E. 16]).  The State argues, the trial transcripts reveal that Mr. Stella did question the witness on his delay in coming forward with information he had known for six months.  (*See id*.).

Having reviewed the record, I find that Mr. Stella did attempt to impeach Mr. Mahue.  It may not have been as successful as it could have been in hindsight, however, that is not the standard.  A Federal habeas court reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." *Hardwick*, 320 F.3d at 1161 (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)) (*en banc*) (When assessing a lawyer's performance, "[c]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.").  Habeas relief is denied as to this subclaim.

### e)  *Failure to Effectively Impeach Jody Spalding*

"Jody testified at the trial that Mr. Bruno asked him to drive while he got rid of the gun and pipe used in the killing the night before, and at trial detailed how Mr. Bruno supposedly directed him to drive to three different canals to facilitate Mr. Bruno's disposal of 'what looked to be' 'a steel bar' 'wrapped up' in 'cloth, like a towel,' what 'looked to be a gun' also wrapped in cloth, and finally, the cylinder of a gun.'"  (Pet. for Writ 137 [D.E. 1]).  The primary argument asserted by Mr. Bruno here is that Mr. Spaulding also gave a sworn statement to the police which was inconsistent with his testimony at trial and Mr. Stella failed to cross examine him regarding the inconsistencies.  (*See id.* at 138).

The State responds that at the evidentiary hearing, Mr. Stella was not even questioned about his trial strategy by post-conviction counsel, therefore, Mr. Bruno cannot prove that his trial strategy was unreasonable.  (*See* Resp. to Pet. 99 [D.E. 16]).  Further, the State argues that Mr.

Stella elicited the great majority of information regarding Mr. Spaulding through other witnesses' testimony, and therefore, Mr. Bruno cannot show prejudice.  (*See id*. at 100).

The Florida Supreme Court denied this claim because Mr. Bruno failed to prove the first prong of *Strickland*; it determined that how trial counsel handled certain witnesses was a "tactical decision" within the "standard competency of defense counsel."  *See Bruno*, 807 So. 2d at 64.  I agree.  Mr. Bruno does not allege that Jody Spaulding's inconsistent statement did not come out at trial, rather his primary argument is that it did not come out on cross examination.  A review of the record shows that certain of these inconsistencies came out during the questioning of other witnesses.  (*See*  R. on Appeal, Ex. A-III at 503-05 [D.E. 17]).  Therefore, it is reasonable that trial counsel made a tactical decision to not cross examine Jody Spaulding on certain issues.  This is a decision which is well within counsel's discretion.  *See Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985)).

Mr. Bruno would also have to show that he was prejudiced by his counsel's deficient performance.  Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding [i.e., the sentencing hearing] would have been different [i.e., resulted in something other than a sentence of death]."  *Id.* at 390 (citations omitted).  Mr. Bruno bears the burden of establishing both deficient performance and prejudice.  *See, e.g., Dill v. Allen,* 488 F.3d 1344, 1354 (11th Cir. 2007).  He has not done so.  Habeas relief is denied.

**7) <u>Failure to Investigate and Present Available Mitigation</u>.**

Under an objective standard of reasonableness, failing to make any preparations for the penalty phase of a capital murder trial deprives a client of reasonably effective assistance of

counsel.  *See Blake v. Kemp*, 758 F.2d 523, 533 (11th Cir. 1985); *see also, Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991).

Mr. Bruno contends, "[d]espite having almost a year to prepare and investigate for the penalty phase, no adequate investigation was conducted. Critical areas of compelling mitigation were overlooked or ignored."  (Pet. for Writ 141 [D.E. 1]).  Mr. Bruno argues that this constitutes ineffective assistance of counsel and that "the Florida Supreme Court's 4-3 decision affirming the denial of relief is both contrary to and/or unreasonable application of *Strickland* and its progeny." (*See id.* at 165).

The State responds that Mr. Bruno "must do more than satisfy the *Strickland* standard.  He must show that in rejecting his ineffective assistance claim, the state court 'applied *Strickland* to the facts of his case in an objectively unreasonable manner.'"  (Resp. to Pet. 108 [D.E. 16]).  Mr. Bruno replies that trial counsel put forth "no more than a hollow shell of the testimony necessary for a 'particularized consideration of the relevant aspects of the character and record of [a] convicted defendant before the imposition upon him of a sentence of death.'"  (Pet'r's Reply 48 [D.E. 26]).

The Florida Supreme Court denied this claim, explaining:

> [Mr.] Bruno's failure to cooperate with counsel prevented counsel from initially obtaining relevant information pertaining to the penalty phase.  Despite this obstacle, counsel still presented evidence concerning several potential mitigating circumstances: Bruno's extensive emotional and drug history, Bruno's drug use at the time of the murder, Dr. Stillman's testimony that Bruno had organic brain damage as a result of his drug use, and testimony that Bruno had attempted suicide and was briefly hospitalized.

*Bruno*, 807 So. 2d at 67-68.  The Florida Supreme Court concluded Mr. Bruno's attorney's performance, while not perfect, did not fall below constitutional minimum standards and that even if Mr. Bruno's attorney's performance was deficient, Mr. Bruno failed to satisfy the second prong

of the *Strickland* test, i.e., he had not established that there is a reasonable probability that the deficiency affected the sentence. *Id.*

After careful review of the record, I find that the Florida Supreme Court's ruling was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Nor was the state court's ruling based on an unreasonable determination of the facts in light of the evidence presented. Based on Mr. Stella's testimony at the Rule 3.850 hearing, it appears that he may not have conducted as thorough an investigation as he could have, however, I agree with the Florida Supreme Court that, even so, Mr. Bruno has failed to prove the prejudice prong of *Strickland.* At sentencing, the jury heard testimony regarding Mr. Bruno's difficult childhood, substance abuse, suicide attempts, troubled mental history, and similar mitigating evidence. In spite of this, the jury recommended, by a majority vote, the imposition of a death sentence for Mr. Bruno. "When a defendant challenges a death sentence . . . , the question is whether there is reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. Mr. Bruno has not shown that any additional investigation, witnesses, or testimony would have altered the ultimate conclusion reached by the jury as to his death sentence. Habeas relief is denied.

## C.  WHETHER MR. BRUNO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL.

Mr. Bruno asserts he was denied effective assistance of appellate counsel when his counsel failed to present certain issues on appeal. (*See* Pet. for Writ 167 [D.E. 1]). Specifically, Mr. Bruno argues that appellate counsel "never raised the issue of Mr. Bruno's competency or the

failure of the trial court to hold a competency hearing during the trial or before sentencing or the trial court's failure to appoint court experts to determine Mr. Bruno's competency." (*Id.* at 175).

Additionally, Mr. Bruno argues ineffective assistance of appellate counsel for failing to raise on direct appeal that the trial court erred in admitting "gruesome, misleading and irrelevant photographs, which were cumulative, inflammatory, and appealed improperly to the jury's emotions" despite trial counsel's properly preserved objections. (*Id.* at 176). The State responds that these claims are procedurally barred, and, alternatively, without merit. (Resp. to Pet. 109-25 [D.E. 16]).

**1) Competency Evaluation.**

Mr. Bruno initially raised this claim on direct appeal. The Florida Supreme Court denied this claim without discussion. *Bruno*, 574 So. 2d at 83. While the State argues that this claim is procedurally barred, I need not reach that determination because the claim is without merit. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (citing 28 U.S.C. § 2254(b)(2)). This sub-claim is denied.

The Florida Supreme Court previously denied this claim finding that "defense counsel did not request a competency hearing prior to trial, the trial court cannot be faulted for not holding one. Therefore, appellate counsel cannot be deemed ineffective for failing to argue that a competency hearing should have been held prior to trial." *Bruno*, 838 So. 2d at 491. A review of the record finds that Dr. Stillman testified at the sentencing hearing and, for the first time, indicated that Mr. Bruno may not have been sane at the time of the crime. (*See* R. on Appeal, Ex. A-V [D.E. 17]). In fact, Mr. Stella advised the trial court that he was in possession of prior letters from Dr. Stillman which indicated that Mr. Bruno "was completely competent, finding no indication of insanity or competency at the time of the offense nor incompetency to stand trial at

-27-

the time of the offense." (*Id.* at 864).  Until that time, there was nothing before the trial court to indicate that Mr. Bruno's competency was at issue.  Therefore, the Florida Supreme Court's determination that the trial court did not err is not unreasonable.  If the trial court did not err, then appellate counsel cannot be faulted for not raising this issue on appeal.  *See Jones v. Campbell*, 436 F.3d 1285, 1304 (11th Cir. 2006) (finding it *a fortiori* that appellate counsel was not ineffective for failing to raise an issue on appeal when the trial counsel's inactions were not deemed ineffective assistance of counsel for initially failing to object).

**2) Photographs.**

Mr. Bruno's appellate counsel initially raised this claim on direct appeal.  The original brief, however, exceeded 100 pages and was stricken by the Florida Supreme Court.  *See Bruno*, 838 So. 2d at 491.  When the amended brief was filed, appellate counsel had abandoned this claim.  *See id*.  While no evidentiary hearing on this issue was conducted, the Florida Supreme Court determined that had this claim been raised, it would have essentially been meritless and therefore appellate counsel cannot be said to be ineffective for failing to raise the claim.  *See id.*  I agree.

At trial, counsel objected to the admission of the photographs.  The trial court overruled the objection and explained that medical examiner had reviewed them and found that each of them would be of value and assist his testimony.  *See id.*  Further, the trial court found them not to be redundant or necessarily gory.  *See id*.  Under Florida law, those decisions are within the sound discretion of the trial court.  *See id.*  Therefore, appellate counsel cannot be said to be ineffective for failing to make this claim on direct appeal.  "The test for ineffectiveness is not whether counsel could have done more; perfection is not required.  Nor is the test whether the best criminal defense attorneys might have done more.  Instead the test is whether some reasonable attorney

-28-

could have acted in the circumstances . . . [as this attorney did] – whether what . . . [this attorney] did was within the 'wide range of reasonable professional assistance.'" *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc) (quoting *Strickland*, 466 U.S. at 689) (citation omitted); *see also Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (stating that to show unreasonableness "a petitioner must establish that no competent counsel would have made such a choice.").  Habeas relief is denied.

## D.  WHETHER THE FLORIDA SUPREME COURT FAILED TO CONDUCT A CONSTITUTIONALLY ADEQUATE HARMLESS ERROR ANALYSIS ON DIRECT APPEAL.

Mr. Bruno's fourth claim for habeas relief is that "[t]he Florida Supreme Court had an obligation to conduct constitutionally-mandated harmless error review when finding error, yet such an analysis is absent from the opinion in Mr. Bruno's direct appeal."  (Pet. for Writ 181 [D.E. 1]).  The State responds that since the Florida Supreme Court determined that no error occurred, there was no need for a harmless error analysis.  (*See* Resp. to Pet. 130-31 [D.E. 16]).

This claim is based on the aggravating factors which were considered by the trial court, and which formed the basis for the death sentence.  The trial court found six aggravating circumstances:

(a) Prior conviction of a prior violent felony;

(b) Murder committed while defendant was engaged in the crime of robbery;

(c) Murder committed for the purpose of avoiding or preventing lawful arrest;

(d) Murder committed for pecuniary gain;

(e) Murder was especially heinous, atrocious, or cruel; [and]

(f) Murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.

*Bruno*, 574 So. 2d at 81.  The trial judge apparently merged circumstances (a) through (d), and considered them together as a single factor, in addition to considering circumstances (e) and (f). *Bruno v. Moore*, 838 So. 2d at 487.  On direct appeal, the Florida Supreme Court explained that circumstance (a) (prior conviction of a prior violent felony) and circumstance (c) (murder committed for the purpose of avoiding or preventing lawful arrest) were not applicable under the facts of this case. *Bruno*, 574 So. 2d at 81-82.  The Florida Supreme Court ultimately concluded that "the murder was aggravated by the three following valid factors: (i) that the murder was committed during a robbery and for pecuniary gain; (ii) that the murder was heinous, atrocious, or cruel; and (iii) that the murder was cold, calculated, and premeditated." *Id.* at 82.

Following his direct appeal, in his state petition for writ of habeas corpus, Mr. Bruno asserted that the court failed to conduct a harmless error analysis, with respect to the aggravating factors which were considered by the trial court.  The Florida Supreme Court first noted that Mr. Bruno's claim was procedurally barred. *Bruno v. Moore*, 838 So.2d at 487.  The court went on to explain that "[e]ven if the claim was not procedurally barred, [it] still would find no merit to the claim." *Id.*  The court explained that on direct appeal, it had determined that "no error occurred because all of the aggravators that were actually weighed by the trial court were upheld by this Court." *Id.* at 489.  The Florida Supreme Court concluded that since no error occurred, there was no need for a harmless error analysis. *Id.*

> In a weighing State like Florida, there is Eighth Amendment error when the sentencer weighs an "invalid" aggravating circumstance in reaching the ultimate decision to impose a death sentence.  Employing an invalid aggravating factor in the weighing process "creates the possibility . . . of randomness," by placing a "thumb [on] death's side of the scale," thus "creat[ing] the risk [of] treat[ing] the defendant as more deserving of the death penalty."  Even when other valid aggravating factors exist, merely affirming a sentence reached by weighing an invalid aggravating factor deprives a defendant of "the individualized treatment that would result from actual reweighing of the mix of mitigating factors and

aggravating circumstances."   While federal law does not require the state appellate court to remand for resentencing, *it must, short of remand, either itself reweigh without the invalid aggravating factor or determine that weighing the invalid factor was harmless error*.

*Sochor v. Florida*, 504 U.S. 527 (1992) (emphasis added) (citations omitted).

I agree with the Florida Supreme Court's holding that this claim was  procedurally barred.[8] A procedural default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court.  *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

Here, the Florida Supreme Court found that Mr. Bruno attempted to raise this claim on a motion for rehearing on his direct appeal.  *Bruno*, 838 So. 2d at 487.  When he attempted to raise this claim in his state petition for writ of habeas corpus, the trial court found the claim procedurally barred.  *See id.*  Except under limited circumstances not present here, Florida law is that "[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."  *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983); *see also Moore v. State*, 820 So. 2d 199, 205 (Fla. 2002) (holding that a second or successive motion for post-conviction relief can be denied on the ground that it is an abuse of process if there is no

---

8  Even if I did not find that this claim was procedurally barred, I would deny this claim since it is without merit.  On direct appeal, the Florida Supreme Court did not find trial court error in the sentencing and imposition of the death penalty.  *See Bruno*, 574 So. 2d at 81-83.  Accordingly, it follows, there was no need to conduct a harmless error analysis.  *See Sochor v. Florida*, 504 U.S. 527 (1992).  Under the applicable AEDPA standards, Mr. Bruno is not entitled to relief on this claim.  The Florida Supreme Court's ruling that the claim was without merit did not involve an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.  Nor was it based on an unreasonable application of facts.

-31-

reason for failing to raise the issues in the previous motion).  Relief is therefore denied pursuant to 28 U.S.C. §2254(d).

Since Mr. Bruno failed to properly raise the claim presented here in the appropriate state court proceedings, resulting in the application of a procedural bar by the state courts, the claim is likewise procedurally barred in this federal court.[9]  Mr. Bruno has failed to demonstrate both objective cause for the failure to properly raise the claim in the state courts, and actual prejudice resulting from the error complained of.[10]  Therefore, he cannot overcome the bar.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848-49 (1999).  Additionally, the procedural bar is appropriate in this case, because Mr. Bruno has not alleged, let alone established, that a fundamental miscarriage of justice will result from application of the bar since he has failed to meet the high standard of factual innocence. *See House v. Bell,* 547 U.S. 518, 538 (2006) (holding actual innocence requires substantive review only in extraordinary cases); *Dretke v. Haley,* 541 U.S. 386 (2004); *see also Bousley v. United States,* 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo,* 513 U.S. 298, 327-328 (1995)).  As this claim was procedurally barred in the state courts, this claim is likewise procedurally barred here.  Therefore, habeas relief is denied.

---

9 First, the federal court must determine whether the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar. Second, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1302-03.

10  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, in essence, a petitioner must demonstrate that there is at least a reasonable probability that the outcome of the proceeding would have been different. *See Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir. 2002).

**E. WHETHER MR. BRUNO WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO THE PROSECUTION'S ALLEGED IMPROPER CLOSING ARGUMENT AT THE GUILT PHASE, AND HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL DUE TO THE FAILURE TO OBJECT.**

"The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Id*. Mr. Bruno argues that portions of the prosecution's "closing argument at the guilt phase" of the trial denied Mr. Bruno a "fundamentally fair trial under the United States Constitution." (Pet. for Writ 193 [D.E. 1]). Specifically, Mr. Bruno asserts that the prosecution made a "barrage of comments which belittled the defense and defense counsel, misstated the law, expressed personal opinion of Mr. Bruno's guilt on behalf of the prosecutor and other governmental offices, and in the course of it all, a little unsworn testimony on the prosecutor's part to provide the jury with facts which were nowhere near the record." (*Id.* at 194). Mr. Bruno further argues that his counsel was ineffective for failing to object to the prosecutor's arguments and preserving this issue for appeal. (*See id.* at 200). The State points out that the Florida Supreme Court denied this claim as being meritless. (*See* Resp. to Pet. 132 [D.E. 16]). Further, the State argues that any ineffective assistance of counsel claim is procedurally barred and should be denied. (*See id.*).

Mr. Bruno first raised the claim regarding fundamental error in the direct appeal of his conviction and sentence. The Florida Supreme Court rejected this claim without discussion. *Bruno*, 574 So. 2d at 81. When Mr. Bruno attempted to raise this claim as ineffective assistance of counsel on appeal of the denial of his Rule 3.850 post-conviction motion, the Florida Supreme

-33-

Court found that Mr. Bruno had "failed to show deficient performance or prejudice arising from the alleged errors, as required by *Strickland*."  *Bruno*, 807 So. 2d at 68.

As an initial matter, even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision.  *See Wright v. Sec'y of Dep't of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002).  The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974); *Hall v. Wainwright*, 733 F.2d 766, 773 (11th Cir. 1984).  In assessing whether the fundamental fairness of the trial has been compromised, such a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different.  *See Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1987), *cert. denied*, 485 U.S. 964 (1988).

Given the standard of review, and because of the deference I must give the state court's determination pursuant to the AEDPA, Mr. Bruno's claim fails.  In this case, it is possible that certain of the prosecutor's comments were not proper, but I do not find that any of these comments deprived Mr. Bruno of a fair trial.  The argument "did not manipulate or misstate evidence, nor did it implicate other specific rights of the accused such as the right to remain silent."  *Darden*, 477 U.S. at 182.  Further, prior to closing arguments, the trial court advised the jury that "what the attorneys say is not evidence.  It is the way that they perceive what the evidence has shown.  If their understanding or their recollection differs from what your collective recollection is, then you must rely upon your recollection and not theirs."  (R. on Appeal, Ex. A-

IV at 670 [D.E. 17]).  Additionally, the trial court advised that "[i]f the attorneys' perception of what the law is differs from what I tell you then you will rely upon what I tell you."  (*Id.*)

After a thorough review of the record, I find that Mr. Bruno's trial was not rendered fundamentally unfair by the prosecutor's comments.  *Donnelly*, 416 U.S. at 642-45; *Hall*, 733 F.2d at 773.  I find the ineffective assistance of counsel claim to be without merit and will refrain from a procedural bar analysis.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (citing 28 U.S.C. § 2254(b)(2)) because it follows that if the Court does not find that this claim warrants relief, any ineffective assistance of counsel claim must also fail.)  Habeas relief is denied as to this claim.

## IV. <u>CONCLUSION</u>

For all the reasons set forth above, it is **ORDERED and ADJUDGED** that Michael George Bruno, Sr.'s Petition for Writ of Habeas Corpus [D.E. 1] is **DENIED**.  All pending motions are denied as moot.  The Clerk is directed to **CLOSE** this case.

**DONE and ORDERED** in chambers, at Miami, Florida, this 30th day of March 2010.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Counsel of record*